IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


CODY R. BRADLEY                                                          PLAINTIFF

vs.                                    Civil No. 4:07-cv-04029

MICHAEL J. ASTRUE                                                        DEFENDANT
Commissioner, Social Security Administration


### MEMORANDUM OPINION

Cody R. Bradley ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social

Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of

the Commissioner of the Social Security Administration ("SSA") denying his application for

Supplemental Security Income ("SSI") under Title XVI of the Act.  The parties have consented to

the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including

conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment

proceedings.  (Doc. No. 2).[1]  Pursuant to this authority, the Court issues this memorandum opinion

and orders the entry of a final judgment in this matter.

1. **Background:**

Plaintiff applied for SSI in 1997, 2000, 2002, and 2004.  (Tr. 209-210).  Only Plaintiff's 2002

and 2004 applications are currently at issue.  (Tr. 209-210, 745-746).  Plaintiff's 2002 application

was filed on August 2, 2002.  (Tr. 49-51).  Plaintiff's 2004 application was filed on November 3,

2004.  (Tr. 210).  In these applications, in other documents filed with the SSA, and at the

---

[1] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for
this case are referenced by the designation "Tr."

1

administrative hearing, Plaintiff alleged he was disabled due to seizures, high blood pressure, back and leg problems, vision problems, and mental problems due to a 1995 head injury. (Tr. 91, 101, 743-771). Plaintiff's 2002 application was denied initially on November 14, 2002 and was denied again on reconsideration on January 23, 2003. (Tr. 27-38). Plaintiff's 2004 application was also denied initially on August 15, 2005 and was denied again on reconsideration on November 9, 2005. (Tr. 242-243).

The SSA held two administrative hearings on Plaintiff's 2002 and 2004 applications. (Tr. 176-199, 743-771). The first hearing was held on July 9, 2004 in Texarkana, Arkansas. (Tr. 176-199). At that hearing, the ALJ only addressed Plaintiff's 2002 application. (Tr. 176-199). On October 29, 2004, the ALJ entered an unfavorable decision denying Plaintiff's 2002 application.[2] (Tr. 11-18). Thereafter, Plaintiff appealed the ALJ's determination to the United States District Court for the Western District of Arkansas, and on June 2, 2006, the Honorable Bobby E. Shepherd reversed and remanded Plaintiff's case to the ALJ for additional consideration of Plaintiff's 2002 application. (Tr. 232-238).

On September 19, 2006, the ALJ held a second hearing on Plaintiff's 2002 and 2004 applications. (Tr. 743-771). This hearing was also held in Texarkana, Arkansas. (Tr. 743-771). Plaintiff was present and was represented by counsel, Charles Barnette, at this hearing. (Tr. 743-771). Plaintiff, Plaintiff's sister (Mae Stuart), Plaintiff's friend (Roland Hayes), and Vocational Expert ("VE") Nancy Hughes testified at this hearing. (Tr. 743-771). At the time of this hearing, Plaintiff was fifty-three (53) years old and had completed the eleventh grade. (Tr. 746-747). Plaintiff also testified at this hearing that he weighed approximately one hundred forty-seven (147)

---

[2] On November 3, 2004, after this unfavorable decision was entered, Plaintiff filed his 2004 application for SSI. (Tr. 210).

pounds and was five-foot ten inches (5'10") tall.  (Tr. 757-758).

On November 22, 2006, the ALJ entered an unfavorable decision denying Plaintiff's request for SSI.  (Tr. 209-221).  In this decision, the ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since his alleged onset date in March of 1995.  (Tr. 220, Finding 1).  The ALJ determined Plaintiff suffered from "medically determinable severe impairments" as outlined in his decision.  (Tr. 220, Finding 2).  These severe impairments included:

> [C]ombination of impairments associated with closed head injury (1996); a history of moderately severe degenerative disc disease at C6-C7; a history of seizure activity with onset as of March 31, 1997 (amenable to medical control without evidence of ongoing uncontrolled symptoms); a history of alcohol abuse diagnosed as of March 1997 and reported to be in sustained partial remission as of October 24, 2002; an ongoing history of tobacco abuse/addiction; a history of lithesis of L3 and L4 associated with intervertebral disc degeneration and moderately large central and left paracentral posterior prolapse of the nucleus pulposus with evidence of stenosis and thecal sac encroachment with early intervertebral disc degeneration at L4-L5 associated with moderate generalized annular bulging delineated above, and a history of adjustment disorder with depression and potential borderline intellectual functioning.

(Tr. 214).  The ALJ determined, however, that Plaintiff's impairments did not meet and were not medically equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 220, Finding 3).

In his decision, the ALJ also evaluated Plaintiff's subjective complaints and determined his Residual Functional Capacity ("RFC").  (Tr. 220, Findings 4-5).  The ALJ found Plaintiff claimed to suffer from disabling pain, including pain which caused him to be unable to work.  (Tr. 215).  The ALJ evaluated these subjective complaints and allegedly disabling symptoms based upon the factors in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984).  (Tr. 214-217).  Specifically, the ALJ discounted Plaintiff's subjective complaints based upon the following four findings: (1) there was no objective medical evidence to show Plaintiff had ever been advised by any treating or examining physician or

psychologist that any of his symptoms were disabling; (2) Plaintiff failed to seek follow-up medical treatment and medications; (3) Plaintiff's alleged symptoms and impairments were amenable to adequate medical control; and (4) Plaintiff was able to engage in numerous routine daily activities despite his claimed disabling impairments.  (Tr. 216-218).

After discounting Plaintiff's subjective complaints of disabling pain, the ALJ determined Plaintiff's RFC.  (Tr. 218).  Specifically, the ALJ determined Plaintiff retained the following RFC:

> [L]ift-carry and push-pull up to 20 pounds occasionally and 10 pounds frequently, with the ability to stand and/or walk at least 6 hours in an 8-hour workday (2 hours in a continuous period) and the ability to sit at least 6 hours in an 8-hour workday (2 hours in an 8-hour workday [sic].  Additionally, in giving consideration to potential issues related to borderline intellectual functioning and/or adjustment disorder with symptoms of depression, the claimant would require an unskilled work setting in which required tasks are learned and performed by rote, with few variables and with simple, concrete supervision, and where the interactions with supervisors, co-worker and/or the public is superficial in nature.

(Tr. 218).

The ALJ then determined that Plaintiff could not perform his Past Relevant Work ("PRW") but could perform work that exists in significant numbers in the national economy.  (Tr. 218-221). The VE testified at the administrative hearing regarding these issues.  (Tr. 768-771).  The VE testified that Plaintiff's PRW included work as a farm laborer (heavy, semi-skilled work).  (Tr. 768).  The VE testified that, based upon Plaintiff's RFC, age, work history, education, and other limitations, Plaintiff could not perform his PRW as a farm laborer.  (Tr. 768-769).

However, the VE also testified that, based upon these limitations, Plaintiff could perform work as a maid with 200,000 such jobs nationally, 5,000 jobs in Arkansas, and 10,000 jobs in Texas.  (Tr. 769).  The VE testified that Plaintiff could perform work as an injection mold machine operator with 75,000 such jobs nationally, 1,000 in Arkansas, and 3,000 in Texas or as a small products assembler

4

with 90,000 such jobs nationally, 1,500 jobs in Arkansas, and 3,000 jobs in Texas.  (Tr. 768-769).

Based upon the VE's testimony, the ALJ determined, considering Plaintiff's age, education, work

experience, and RFC, that he was capable of making a successful adjustment to other work that exists

in significant numbers in the national economy.  (Tr. 221, Findings 11-12).  Accordingly, the ALJ

found Plaintiff was not under a "disability" as defined by the Act.  (Tr. 221, Finding 12).

On November 28, 2006, Plaintiff requested that the Appeals Council review the ALJ's

unfavorable decision.  (Tr. 203-205).  On March 14, 2007, the Appeals Council declined to review

the ALJ's decision.  (Tr. 200-202).  On March 30, 2007, Plaintiff filed the present action.  (Doc. No.

1).  The parties consented to the jurisdiction of this Court on April 4, 2007.  (Doc. No. 2).  This case

is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's

findings are supported by substantial evidence on the record as a whole.  *See* 42 U.S.C. § 405(g)

(2006);  *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than

a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to

support the Commissioner's decision.  *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the

Court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome or because the Court would have decided the case differently.  *See*

*Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).  If, after reviewing the record, it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the

findings of the ALJ, the decision of the ALJ must be affirmed.  *See Young v. Apfel,* 221 F.3d 1065,

1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

3. **Discussion:**

Plaintiff brings the present appeal claiming the following: (A) the ALJ's credibility determination is not supported by substantial evidence; (B) the ALJ's RFC determination is not supported by substantial evidence; (C) the ALJ's Step Five determination is not supported by substantial evidence; and (D) the ALJ's disability determination as a whole is not supported by substantial evidence.  (Doc. No. 5, Pages 1-6).  Plaintiff also argues in his letter to the Appeals Council on November 28, 2006 that the ALJ improperly classified Plaintiff as a "Younger Person" (under the age of forty-nine) when he was fifty-three on the date of the ALJ's hearing.  (Tr. 203-205).

In response, Defendant argues the ALJ's credibility determination is supported by several valid findings and is entitled to deference.  (Doc. No. 6, Pages 5-12).  Defendant also argues the ALJ's RFC determination–that Plaintiff retains the RFC to perform the wide range of light work–is supported by substantial evidence in the record.  *See id.*  Defendant argues the ALJ properly relied upon the reports from Dr. C. Yates Morgan, Ph.D. and Dr. Rafael F. Otero, Ph.D. in determining Plaintiff's RFC. *See id.* at 10.  Defendant argues the ALJ properly evaluated, and ultimately accorded less weight to, the reports of Dr. Bradley Harbin, M.D. and Dr. Betty Feir, Ph.D.  *See id.*

Finally, Defendant argues the ALJ's Step Five determination is supported by substantial evidence, and the ALJ committed no error by classifying Plaintiff as a "Younger Person."  *See id.* at 12-14.  Defendant argues that the VE's testimony, which was given in response to the ALJ's properly-phrased hypothetical, provides substantial evidence supporting the ALJ's Step Five determination. *See id.* at 13-14.  Defendant also argues that the Medical-Vocational Guidelines ("Grids"), which may inform an ALJ's determination, direct a finding of "Not Disabled" regardless of whether Plaintiff was classified as a "Younger Person" or as a "Person Closely Approaching Advanced Age." *See id.* at 13.

7

### A. ALJ's Credibility Determination

Plaintiff argues the ALJ erred in assessing his subjective complaints that his two pinched nerves in his back, his seizures, and his high blood pressure cause him to suffer from disabling pain. (Doc. No. 5, Pages 2-5). Specifically, Plaintiff argues that the ALJ did not properly evaluate his subjective complaints pursuant to *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984). *See id.* In response, Defendant argues that the ALJ properly evaluated all the evidence in the record and provided several valid reasons for discounting Plaintiff's subjective complaints. (Doc. No. 6, Pages 10-12). Defendant argues that "[a]ssessing and resolving credibility issues is a matter that is properly within the purview of the ALJ" and that the ALJ's credibility determination is entitled to deference. *See id.*

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.[3]  *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions.   *See Polaski,* 739 at 1322.   The factors must be analyzed and considered in light of the claimant's subjective complaints of pain.   *See id.*   The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints.   *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th

---

[3] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors.   *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007).  Thus, this Court will not require the analysis of these additional factors in this case.

Cir. 2000).  As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference.  *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors.  *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998).  The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, the ALJ discounted Plaintiff's subjective complaints based upon the following four findings: (1) there was no objective medical evidence to show Plaintiff had ever been advised by any treating or examining physician or psychologist that any of his symptoms were disabling; (2) Plaintiff failed to seek follow-up medical treatment and medications; (3) Plaintiff's alleged symptoms and impairments were amenable to adequate medical control; and (4) Plaintiff was able to engage in numerous routine daily activities despite his claimed disabling impairments.  (Tr. 216-218).  Plaintiff has not suggested that any one of these *specific findings* are invalid and has not provided this Court with any substantive argument detailing the ALJ's allegedly improper evaluation of Plaintiff's subjective complaints.  After reviewing the ALJ's findings and the briefing on this issue, this Court finds the ALJ's credibility determination is supported by several valid findings, is entitled to deference, and should be affirmed.  *See Lowe v. Apfel,* 226 F.3d at 971-72.

9

**B. ALJ's RFC Determination**

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence in the record.  (Doc. No. 5, Pages 1-5).  Plaintiff does not provide any specific argument as to how the ALJ's RFC determination was deficient.  *See id.*  Plaintiff merely references the two reports by Dr. Betty J. Feir, Ph.D. and Dr. Bradley Harbin, M.D. and claims those two reports support his argument.  *See id.*  Plaintiff, however, does not state how the ALJ's RFC determination should be changed as a result of these reports.  *See id.*  Plaintiff merely claims the ALJ did not properly evaluate his pain due to his "two pinched nerves in his back, seizures, [and] high blood pressure."  *See id.*

In response, Defendant argues that Plaintiff's medical records support the ALJ's RFC determination.  (Doc. No. 6, Pages 5-12).  Defendant argues that Plaintiff underwent five consultative examinations performed by a total of five different doctors and psychologists, and these examinations provide substantial evidence supporting the ALJ's RFC determination.  *See id.*  Specifically, Defendant argues that the consultative examinations conducted by Dr. C. Yates Morgan, Ph.D. and Dr. Rafael F. Otero, Ph.D. provide substantial evidence supporting the ALJ's RFC determination.  *See id.*

Prior to Step Four of the sequential analysis in a disability determination, the ALJ is required to determine a claimant's RFC.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace.  *See Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004).  The ALJ should also consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019 (8th Cir. 2002)).  The plaintiff has the burden of producing documents to support his or her claimed RFC.  *See*

10

*Cox*, 160 F.3d at1206;  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ, however, bears the primary responsibility for making the RFC determination and for ensuring that there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports his or her RFC determination.  *Lauer v. Apfel,* 245 F.3d 700, 703-04 (8th Cir. 2001).  Furthermore, this Court is required to affirm the ALJ's RFC determination if that determination is supported by substantial evidence on the record as a whole.  *See McKinney v. Apfel,* 228 F.3d 860, 862 (8th Cir. 2000).

Based upon a review of the transcript in this case, this Court finds the ALJ's RFC determination is supported by substantial evidence in the record.  In 2002 and 2005, Plaintiff underwent a total of five consultative examinations, and the results from these examinations provide the bulk of the medical records in this case.  (Tr. 143-150, 311-326).  These five examinations were conducted as follows: (1) Medical evaluation conducted by Dr. Bradley Harbin, M.D. on October 21, 2002; (2) Psychological evaluation conducted by Dr. C. Yates Morgan, Ph.D. on October 24, 2002; (3) Medical evaluation conducted by a physician at the Prescott Family Clinic on March 16, 2005[4]; (4) Psychological evaluation conducted by Dr. Betty Feir, Ph.D. on April 7, 2005; and (5) Psychological evaluation conducted by Dr. Rafael Otero, Ph.D. on August 1, 2005.  (Tr. 143-150, 311-326).

Apart from these five reports, Plaintiff has only provided a few emergency room treatment records from Christus St. Michael Health System and Wadley Regional Medical Center dated during the relevant time period.[5]  (Tr. 350-385).  This Court will review each of Plaintiff's alleged

---

[4] The name of the physician was not included in the transcript.  (Tr. 311-316).

[5] Many of these medical records are not dated during the relevant time period.  (Tr. 110-142).  SSI is not payable to a claimant prior to the date of the claimant's SSI application.  *See Cruse v. Bowen,* 867 F.2d 1183, 1185 (8th Cir. 1989).  In this case, the earliest application currently before this Court is dated August 2, 2002.  Plaintiff's

disabilities–seizures, high blood pressure, back and leg problems, vision problems, and mental problems due to a 1995 head injury–in light of these medical records.[6]

### 1. Alleged Disability Due to Seizures

First, Plaintiff claims he is disabled because he suffers from seizures. (Tr. 91, 101, 743-771). On October 21, 2002, Dr. Harbin noted that Plaintiff's last reported seizure was in 1997. (Tr. 143). This finding–that Plaintiff has not suffered from seizures since 1997–is consistent with the medical records from Dr. R.F. Burton, M.D and Dr. Michael E. Clevenger, M.D, which date from 1998 until 2001 and is consistent with Plaintiff's own testimony.[7] (Tr. 110-142, 187, 750). Plaintiff also reported to Dr. Harbin during this examination that he was not taking any medication for these seizures, which indicates Plaintiff's claimed seizures were not disabling. *See Shannon v. Chater,* 54 F.3d 484, 487 (noting that the claimant's "inconsistent use of painkillers" detracts from the claimant's credibility and suggests that the severity of the claimant's pain was not so great as to preclude sedentary-type jobs). (Tr. 143).

Plaintiff has presented no medical evidence to this Court suggesting that he continues to suffer from seizures or that he continued to suffer from seizures after the date he filed his SSI application. Because the medical records establish that Plaintiff stopped suffering from seizures well before the

medical records dated from 1996 until 2000 (Tr. 110-142) are dated outside the relevant time period and will not be considered by this Court. *See id.* Even Plaintiff's attorney recognizes that the medical records dated prior to 2002 are not relevant to Plaintiff's current applications for SSI. (Tr. 183).

[6] These alleged impairments could also be disabling *in combination. See* 20 C.F.R. § 404.1523 (2007). Plaintiff, however, does not claim the ALJ erred in considering these impairments in combination, and after reviewing the ALJ's opinion, this Court finds the ALJ did properly consider these impairments in combination. *See Hajek v. Shalala,* 30 F.3d 89, 92 (8th Cir. 1994) (holding that statements such as "the evidence *as a whole* does not show that the claimant's *symptoms* . . . preclude his past work as a janitor" and "[t]he claimant's *impairments* do not prevent him from performing janitorial work . . ." sufficiently establish that the ALJ properly considered the combined effects of the plaintiff's impairments) (emphasis added).

[7] Plaintiff testified at the administrative hearing on September 19, 2006, "I have seizures. I haven't had it lately but I have it." (Tr. 750).

12

beginning of the relevant time period in this case, this Court finds that Plaintiff's claimed seizure disorder does not impact his RFC and that Plaintiff is not disabled due to his seizures. *See Cruse,* 867 F.2d at 1185.

### 2. Alleged Disability Due to High Blood Pressure

Second, Plaintiff claims he is disabled due to his high blood pressure. (Tr. 91, 101, 743-771). On October 21, 2002, Dr. Harbin evaluated Plaintiff's claimed high blood pressure. (Tr. 143). Dr. Harbin noted that Plaintiff's high blood pressure was reportedly under "good control" and was "mild." *See id.* Dr. Harbin noted that Plaintiff did not report any dizziness, headaches, edema, or chest pain related to his high blood pressure. *See id.* Dr. Harbin also noted that Plaintiff reported he did not take any medication for his high blood pressure. *See id.*

Plaintiff has presented no medical evidence to this Court suggesting that his high blood pressure is not controlled with medication. *See id.* Because the medical records (including Dr. Harbin's medical records) establish that Plaintiff's high blood pressure is under good control, this Court finds that Plaintiff is not disabled due to his high blood pressure and that the ALJ properly evaluated Plaintiff's high blood pressure in determining Plaintiff's RFC. *See Stout v. Shalala,* 988 F.2d 853, 855 (8th Cir. 1993) (noting that "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling").

### 3. Alleged Disability Due to Back and Leg Problems

Third, Plaintiff claims he is disabled due to his back and leg problems.[8] (Tr. 91, 101, 743-

---

[8] Plaintiff's medical records do not indicate that he suffers from any serious "leg problems," and Plaintiff did not clarify in his Appeal Brief or at the administrative hearing what type of "leg problems" he has.  He merely stated that his right leg "seems numb most of the time." (Tr. 755).  Plaintiff's medical records do, however, indicate that he suffers from back pain and other back problems.  Thus, this Court will only evaluate Plaintiff's back problems.

771).  In at least one examination, Plaintiff reported that he could only "walk about 100 yards" due to his back pain.  (Tr. 312).  Plaintiff testified at the administrative hearing that he could only sit for fifteen minutes at a time due to his back pain and could only sit for two hours out of an eight-hour day.  (Tr. 756-757).  Plaintiff also testified that, due to his back pain, he could only walk about one block without any problems and could only stand for fifteen minutes at a time and two hours in an eight-hour period without any problems.  (Tr. 757).  Plaintiff testified he could only lift ten pounds, could only stoop "a little bit," and could not bend over.  *See id.*  There are three sets of medical records related to Plaintiff's back pain.  The first report was done on October 21, 2002 by Dr. Harbin. (Tr. 143).  Dr. Harbin noted that the intensity of Plaintiff's back pain was seven out of ten.  *See id.* Dr. Harbin also noted that Plaintiff reported he suffered from back pain bilaterally and in his lower lumbar region.  *See id.*

However, upon examining Plaintiff, Dr. Harbin found Plaintiff had a normal range of motion of the cervical and lumbar spine.  (Tr. 145).  Also during his examination, Dr. Harbin noted that, despite his claims of back pain, Plaintiff did not report any numbness or weakness in his back.  (Tr. 144).  Dr. Harbin also did not detect any muscle spasms, muscle weakness, muscle atrophy, or sensory abnormality as a result of Plaintiff's back problems.  (Tr. 145-146).  Dr. Harbin reported that, despite his complaints of back pain, Plaintiff had a normal gait and could stand and walk without assistive devices.  (Tr. 146).  Dr. Harbin reported that Plaintiff was able to walk on his heels and toes and squat and rise from a squatting position.  (Tr. 147).  Dr. Harbin diagnosed Plaintiff with "subjective low back pain" and found that Plaintiff was able to "lift, carry, or handle objects less than 25 lbs 30 minutes per hour."  (Tr. 147) (emphasis added).  These findings are consistent with the ALJ's determination that Plaintiff retains the RFC to perform a significant range of light work and

14

can occasionally lift up to twenty pounds.

The second report was conducted on March 16, 2005 by a physician at the Prescott Family Clinic. (Tr. 311-316). Despite Plaintiff's complaints of back pain, the consultative physician found that Plaintiff had a full range of motion in his back and neck. (Tr. 314). This physician also found Plaintiff had a normal gait, no muscle atrophy, and could squat and arise from a squatting position. (Tr. 315).

The third set of records were submitted during the September 19, 2006 hearing. (Tr. 350-385). These records are from both Christus St. Michael's Health System and Wadley Regional Medical Center. *See id.* These records date from July 12, 2005 until January 16, 2006. *See id.* These records indicate that Plaintiff was involved in an automobile accident in July of 2005. *See id.* Plaintiff claims that, as a result of this automobile accident, he suffered two pinched nerves in his lower back. (Tr. 753-754). Plaintiff also claims that his lower back pain became more severe after this automobile accident. (Tr. 755). A July of 2005 CT scan of Plaintiff's abdomen, pelvis, and cervical spine revealed Plaintiff suffered from some degenerative problems in his back:

> Moderate degenerative disc disease at C5-6 and C6-7 contributing to mild left sided foraminal narrowing at C6-7. Mild degenerative changes are noted in the remainder of the cervical spine. Otherwise, negative CT of the cervical spine.

(Tr. 382). Later X-Rays and a lumbar spine MRI also confirmed Plaintiff suffered from degenerative disc disease. (Tr. 360, 365-366).

None of these records, however, indicate that Plaintiff has any restrictions on his ability to perform a significant range of light work. In fact, Dr. Harbin's report–that Plaintiff can lift up to twenty-five pounds–is consistent with the ALJ's RFC determination. (Tr. 147). Absent any physician placing restrictions on Plaintiff's ability to perform a significant range of light work due to his lower

back pain, the ALJ's RFC determination is supported by substantial evidence and should be affirmed. *See Brown v. Chater,* 87 F.3d 963, 965 (8th Cir. 1996) (noting that the lack of any significant restrictions on a claimant's ability to work is inconsistent with a claimant's complaints of disabling pain); *Gregg v. Barnhart,* 354 F.3d 710, 713  (8th Cir. 2003) (affirming an ALJ's credibility determination which was based partially upon the finding that none of the claimant's treating physicians had determined the claimant was disabled).

### 4. Alleged Disability Due to Vision Problems

Fourth, Plaintiff claims he is disabled because of "vision problems." (Tr. 91, 101, 743-771). On October 21, 2002, Dr. Harbin reported Plaintiff had uncorrected vision of 20/70 in both eyes. (Tr. 145).  Plaintiff testified at the administrative hearing on September 19, 2006 that he had bad vision but that he had not yet obtained any glasses to correct his vision. (Tr. 750).  Interestingly, Plaintiff does not dispute the fact that his vision can be corrected with glasses*.[9]*

If Plaintiff's claimed impairment from "vision problems" can be corrected with glasses, Plaintiff is not permanently disabled due to these vision problems.  *See Brown v. Barnhart,* 390 F.3d 535, 540 (holding that "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (internal quotes omitted).  Accordingly, this Court finds the ALJ did not err in evaluating Plaintiff's claimed vision problems.

### 5. Alleged Disability Due to Mental Problems

Fifth and finally, Plaintiff claims he is disabled due to "mental problems" resulting from a

---

[9] Instead, Plaintiff claims *he cannot afford* glasses to treat his vision problems.  (Tr. 750).  The ALJ, however, considered Plaintiff's claimed inability to afford treatment (Tr. 216) and properly discounted it.  *See Murphy v. Sullivan,* 953  F.2d 383, 386-87 (8th Cir. 1992) (holding that financial hardship is not severe enough to justify a failure to seek medical treatment when there is no evidence that the claimant sought to obtain any alternative or low-cost medical treatment).  Because Plaintiff has not raised his inability to afford treatment in this appeal.  (Doc. No. 5).  Therefore, this issue will not be specifically addressed in this opinion.

1995 head injury when he was beaten in the head by an intruder. (Tr. 91, 101, 743-771). However, Plaintiff has not clearly stated, in either his Appeal Brief or at the administrative hearing, which "mental problems" he has had since his 1995 head injury. Apparently, Plaintiff claims these "mental problems" cause him to be "unable to remember some things." (Tr. 59). In order to assess his claimed "mental problems," Plaintiff underwent three consultative examinations. (Tr. 148-150, 317-322, 323-326). These examinations were conducted on October 24, 2002, April 7, 2005, and August 1, 2005. *See id.*

The first consultative psychological examination was conducted on October 24, 2002 by Dr. C. Yates Morgan, Ph.D.. (Tr. 148-150). During this examination, Plaintiff reported that he suffered from short-term memory problems and could not "think right" after he was assaulted in 1995. (Tr. 148). Plaintiff reported during this examination that he had never been treated for his mental health problems. (Tr. 149). This failure to seek medical treatment indicates that Plaintiff was not disabled due to his claimed mental impairment. *See Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir. 1995) (holding that  a claimant's failure to seek treatment may be inconsistent with a disability). Dr. Morgan reported Plaintiff exhibited no symptoms of "thought disorder, major affective, cognitive or behavioral disorder" during the examination. (Tr. 149). Based upon his examination, Dr. Morgan concluded that Plaintiff did not suffer from two or more areas with significant limitations in adaptive functioning and Plaintiff's adaptive functioning was not consistent with a diagnosis of mental retardation. (Tr. 150). Dr. Morgan's findings are entirely consistent with the ALJ's determination that Plaintiff did not suffer from a mental disability.

The second consultative psychological examination was conducted on April 7, 2005 by Dr. Betty J. Feir, Ph.D. (Tr. 317-322). Once again, during this examination, Plaintiff reported he had never been treated for his mental health problems. *See id.* In her report, Dr. Feir reported Plaintiff's

IQ to be 80 or greater. *See id.* Dr. Feir diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Severe with psychotic features" and with "Alcohol abuse" secondary to that his depression. *See id.* Dr. Feir also found, however, that Plaintiff had not received treatment, and did not take medication, for either disorder. *See id.* Furthermore, there is no indication from the record that Plaintiff's diagnosed depression could not be controlled with medication. *See Estes v. Barnhart,* 275 F.3d 722, 725 (8th 2002) (holding that an impairment which can be controlled by treatment or medication is not considered disabling). In her report, Dr. Feir also found that Plaintiff did not suffer from two or more areas with significant limitations in adaptive functioning and that Plaintiff's adaptive functioning was not consistent with a diagnosis of mental retardation. *See id.*

The third consultative psychological examination was conducted on August 1, 2005 by Dr. Rafaeal F. Otero, Ph.D., and his findings are consistent with Dr. Feir's findings. (Tr. 323-326). Dr. Otero  found Plaintiff suffered from adjustment disorder with depression (Axis I), had a history of back problems (Axis III), suffered from "[p]sycho stressors - mild" (Axis IV), and had a "[c]urrent GAF [of] 80" (Axis V). (Tr. 325). Dr. Otero found Plaintiff had a borderline IQ, no signs or symptoms associated with brain dysfunction, and no problems associated with concentration. (Tr. 325-326). Dr. Otero also found Plaintiff did not have two or more areas with significant limitations in adaptive functioning and did not have adaptive functioning consistent with a diagnosis of mental retardation. (Tr. 325-326).

These three reports indicate that Plaintiff suffers from some level of depression, but these reports do not indicate that Plaintiff suffers from any other disabling "mental problems." (Tr. 148-150, 317-322, 323-326). Furthermore, despite these reports of depression, Plaintiff has also indicated that he has never sought treatment for this depression and has not taken medication for this depression. *See Shannon,* 54 F.3d at 486 (holding that the failure to seek treatment may be

18

inconsistent with disability); *Camp v. Barnhart,* 186 Fed.Appx. 696, 696-97 (8th Cir. 2006) (unpublished).  There is also no indication in the record that this depression limits Plaintiff in his ability to work.  *See Gregg v. Barnhart,* 354 F.3d 710, 713 (8th Cir. 2003) (holding that an ALJ may properly consider in a disability determination whether a physician placed any limitations on a claimant's ability to work).

Furthermore, in his applications and at the administrative hearing on September 19, 2006, Plaintiff did not claim he was disabled due to depression.  (Tr. 91, 101, 743-771).  Instead, Plaintiff alleged he suffered from "mental problems" due to his 1995 head injury.  *See id.*  An ALJ is not required to investigate a condition that was not alleged in a claimant's application for benefits or at the administrative hearing.  *See Gregg,* 354 F.3d at 713.  In the present action, Plaintiff did not allege he was disabled due to depression in his applications for SSI.  (Tr. 91, 101).  Accordingly, even though there is some evidence indicating Plaintiff suffers from depression, the ALJ's determination–that he was not disabled due to depression–should be affirmed.

### C. ALJ's Step Five Determination

Plaintiff claims the ALJ's Step Five Determination is not supported by substantial evidence. (Doc. No. 5, Page 2).   Plaintiff essentially claims the ALJ improperly relied upon the VE's response to a hypothetical that Plaintiff retains the capacity for "light work."  *See id.*  Plaintiff claims the ALJ should have found Plaintiff was capable of only performing sedentary work, which would have dictated a finding of "not disabled" based upon the ALJ's own statements: "in lieu of a second hypothetical, if I'm reading the grids right, we take it to sedentary.  *That would dictate a favorable decision.*  So, there's no need for me to ask a second hypothetical."  (Tr. 770) (emphasis added).  In response, Defendant argues that the ALJ's hypothetical to the VE included all of Plaintiff's impairments he found credible and that the VE's response to the ALJ's hypothetical provides

19

substantial evidence in support of the ALJ's disability determination. (Doc. No. 6, Pages 12-14).

This Court finds the ALJ's Step Five Determination is supported by substantial evidence. In his hypothetical to the VE, the ALJ included all of Plaintiff's impairments he found credible:

> All right, for our first hypothetical please assume an individual 53 years of age with an 11th grade education and past relevant work as a farm laborer and assume a light exertional residual functional capacity and assume, well, assume the individual is limited to work where interpersonal contact is incidental to the work performed. Tasks are learned and performed by rote involving few variables and requiring little judgment, and assume the individual would require simple, direct, and concrete supervision.

(Tr. 768-769). In response to this hypothetical, the VE provided several jobs Plaintiff could perform that exist in substantial numbers in the national economy. (Tr. 769-770). This hypothetical properly includes Plaintiff's RFC for light work, and age, and this response to the ALJ's properly-phrased hypothetical provides substantial evidence in support of the ALJ's disability determination. *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992) (holding that a vocational expert's response to a properly-phrased hypothetical question provides substantial evidence in support of the ALJ's Step Five determination).

### D. ALJ's Disability Determination

Plaintiff generally claims in his Appeal Brief that the ALJ's disability determination is not supported by substantial evidence in the record. (Doc. No. 6, Page 2). As outlined above, the ALJ's credibility, RFC, and Step Five determinations are supported by substantial evidence in the record and should be affirmed. *See Discussion, supra.* In his Appeal Brief, Plaintiff does not specifically claim that any other part of the ALJ's disability determination is not supported by substantial evidence. Accordingly, based upon the reasoning above, I find the ALJ's disability determination is supported by substantial evidence and should be affirmed.

Furthermore, Plaintiff claims in his letter to the Appeals Council that the ALJ erred in

characterizing him as a "Younger Person" instead of as a "Person Closely Approaching Advanced Age."   (Tr. 203-205).   However, based upon Plaintiff's RFC, education, and previous work experience, either characterization dictates a finding of "Not Disabled" under the Grids.   *See* Rules 202.10 and 202.17.   Also, in his hypothetical to the VE, the ALJ directed the VE to consider a "hypothetical individual"as being fifty-three (53) years old (Tr. 768-769), and the ALJ properly based his disability determination upon the VE's response to this hypothetical.   Accordingly, this Court finds the ALJ properly considered Plaintiff's age in his hypothetical to the VE; and even though the ALJ may have improperly characterized Plaintiff as a "Younger Person," the ALJ's error does not warrant a reversal and remand.

**4. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed.   A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 27th day of March, 2008.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE

21